J-S06001-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: L.S.M., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: D.J., FATHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 2584 EDA 2017 |

Appeal from the Decree Entered July 13, 2017
In the Court of Common Pleas of Philadelphia County Family Court at
No(s):  CP-51-AP-0000707-2017

BEFORE:  BOWES, J., McLAUGHLIN, J., and MUSMANNO, J.

MEMORANDUM BY BOWES, J.:                 **FILED MARCH 27, 2018**

D.J. ("Father") appeals from the July 13, 2017 decree involuntarily terminating his parental rights to his daughter, L.S.M., born in January of 2011.[1]  We affirm.

On October 31, 2012, the Philadelphia Department of Human Services ("DHS") became involved with this family due to a report alleging that Mother had improperly supervised L.S.M., Mother suffered from mental health problems, and that she abused drugs.  On January 3, 2013, DHS received a report alleging Father had sexually abused L.S.M.'s maternal half-sibling.  Upon investigation, the report was indicated.  N.T., 7/13/17, at 15.

---

[1] By separate decrees entered on the same date, the trial court involuntarily terminated the parental rights of L.S.M.'s mother, T.M. ("Mother"), and unknown father.  Neither Mother nor any unknown father filed a notice of appeal.

On January 15, 2013, the trial court adjudicated L.S.M. dependent and placed her with her maternal grandmother. Approximately eight months later, the court moved L.S.M. to therapeutic foster care where she remains. In addition, L.S.M. has participated in trauma-based therapy at the Children's Crisis Treatment Center ("CCTC") throughout the history of this case.

DHS established L.S.M.'s placement goal as return to parent or guardian. Father's family service plan ("FSP") required him to participate in supervised visits with L.S.M., attend "caregiver sessions" at CCTC, and maintain suitable housing and employment. N.T., 7/13/17, at 23. In November of 2014, the court directed DHS to refer Father for sexual offender counseling.

Father's participation with visitation was sporadic. There is no indication in the record that he participated in supervised visitations during 2013, his daughter's first year in placement. In 2014, the court granted Father supervised visitation if he successfully passed a polygraph test and if L.S.M.'s therapist agreed. During one period prior to July 2015, Father missed four of thirteen visitations with L.S.M. Similarly, between August 2016 and January 2017, the court twice suspended Father's visitations, some of which were unsupervised, due to Father's inconsistent participation and non-attendance at scheduled permanency review hearings.

On June 26, 2017, DHS filed a petition for the involuntary termination of Father's parental rights pursuant to 23 Pa.C.S. § 2511(a)(1), (2), (5), (8),

and (b).  A hearing occurred on the petition on July 13, 2017, during which DHS presented the testimony of its caseworker, Lakesha Akines.  In addition, DHS introduced the dependency docket with respect to L.S.M., which the court admitted into the record.  L.S.M. was represented separately during the termination hearing by counsel and a guardian *ad litem* ("GAL"), both of whom recommended, on the record and in open court, that the court terminate Father's parental rights involuntarily.  N.T., 7/13/17, at 46-47.  Father did not appear at the termination hearing, but he was represented by court-appointed counsel.  Father's counsel cross-examined Ms. Akines, but he presented no evidence on Father's behalf.

On July 13, 2017, the trial court involuntarily terminated Father's parental rights pursuant to 23 Pa.C.S. § 2511(a)(1), (2), (5), (8), and (b).  Father timely filed a notice of appeal and a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b).  The trial court filed its Rule 1925(a) opinion on November 16, 2017.

On appeal, Father presents the following issues for our review:

1. Whether the [t]rial [c]ourt erred in [t]erminating [Father's] [p]arental [r]ights under 23 Pa.C.S. [§] 2511(a)(1), the evidence having been insufficient to establish Father had evidenced a settled purpose of relinquishing parental claim, or having refused or failed to perform parental duties[?]

2. Whether the evidence was sufficient to establish that [Father] had refused or failed to perform parental duties, caused [L.S.M.] to be without essential parental care, that conditions having led to placement had continued to exist, or finally that any of above could not have been remedied[?]

3. Whether the [e]vidence was sufficient to establish that [t]ermination of [p]arental [r]ights would best serve the [n]eeds and [w]elfare of [L.S.M.] under 23 Pa.C.S. [§] 2511(b)[?]

Father's brief at 5. L.S.M.'s counsel filed a brief in opposition to Father's position, which DHS expressly joined. The guardian *ad litem* neglected to file a brief.

We review Father's issues according to the following standard.

The standard of review in termination of parental rights cases requires appellate courts to accept the findings of fact and credibility determinations of the trial court if they are supported by the record. If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion. A decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will. The trial court's decision, however, should not be reversed merely because the record would support a different result. We have previously emphasized our deference to trial courts that often have first-hand observations of the parties spanning multiple hearings.

*In re T.S.M.*, 71 A.3d 251, 267 (Pa. 2013) (citations and quotation marks omitted).

Termination of parental rights is governed by Section 2511 of the Adoption Act, which requires a bifurcated analysis.

Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in Section 2511(a). Only if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of the analysis pursuant to Section 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child. One major aspect of the needs and welfare analysis concerns the nature and status of the emotional bond between

parent and child, with close attention paid to the effect on the child of permanently severing any such bond.

*In re L.M.*, 923 A.2d 505, 511 (Pa.Super. 2007) (citations omitted).

We need only agree with the trial court as to any one subsection of § 2511(a), as well as § 2511(b), in order to affirm. *See In re B.L.W.*, 843 A.2d 380, 384 (Pa.Super. 2004) (*en banc*). In this case, we conclude that the certified record supports the decree pursuant to § 2511(a)(2) and (b), which provide as follows.

> **(a) General Rule**.—The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:
>
> . . . .
>
> (2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.
>
> . . . .
>
> **(b) Other considerations**.--The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S. § 2511(a)(2) and (b).

This Court has explained that the moving party must produce clear and convincing evidence with respect to the following elements to terminate parental rights pursuant to § 2511(a)(2): (1) repeated and continued incapacity, abuse, neglect or refusal; (2) such incapacity, abuse, neglect or refusal caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being; and (3) the causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied. *See In re Adoption of M.E.P.*, 825 A.2d 1266, 1272 (Pa.Super. 2003).

Pursuant to § 2511(a)(2), parents are required to make diligent efforts towards the reasonably prompt assumption of full parental responsibilities. *In re A.L.D.* 797 A.2d 326, 340 (Pa.Super. 2002). The grounds for termination of parental rights under § 2511(a)(2), due to parental incapacity that cannot be remedied, are not limited to affirmative misconduct. *Id*. at 337. To the contrary those grounds may include acts of refusal as well as incapacity to perform parental duties. *Id*.

With respect to § 2511(b), this Court has stated that, "[i]ntangibles such as love, comfort, security, and stability are involved in the inquiry into the needs and welfare of the child." *In re C.M.S.*, 884 A.2d 1284, 1287 (Pa.Super. 2005) (citation omitted). In addition, the trial court "must also discern the nature and status of the parent-child bond, with utmost attention to the effect on the child of permanently severing that bond." Id. (citation

omitted). However, "[i]n cases where there is no evidence of any bond between the parent and child, it is reasonable to infer that no bond exists. The extent of any bond analysis, therefore, necessarily depends on the circumstances of the particular case." *In re K.Z.S.*, 946 A.2d 753, 762-63 (Pa.Super. 2008) (citation omitted).

On appeal, Father argues that the evidence was insufficient to terminate his parental rights pursuant to Section 2511(a)(2). Specifically, Father contends that he has never had "any history regarding . . . mental health issues, or concerns surrounding drug or alcohol abuse, or . . . anything else that would impede [his] ability to parent." Father's brief at 14. We disagree.

In its Rule 1925(a) opinion, the trial court found that L.S.M. had been in placement for forty-eight months by the time of the termination hearing, and Father had not progressed in his FSP objectives to permit reunification. Trial Court Opinion, 11/16/17, at 5. The testimony of Ms. Akines, the DHS caseworker, supports the court's findings. Indeed, she testified that Father was not in compliance with any of his FSP objectives at the time of the termination hearing. N.T., 7/13/17, at 29.

Specifically, with respect to his FSP housing requirement, Ms. Akines testified that Father resides with L.S.M.'s paternal grandmother "who has a[n] unspecified] prohibited offense." *Id*. at 24. She testified on direct examination as follows:

[Q]: And has [DHS] engaged in notification that this would be a home that would not be viable for reunification if it has a prohibited offender there?

[A]: That's correct.

[Q]: And was that something that [DHS] notified Father of recently, or throughout the case if you know?

[A]: To my knowledge, it would have been throughout the case during FSP . . . [meetings].  And that's why the housing goal remains on the FSP.

*Id*.  Furthermore, Ms. Akines testified that DHS referred Father to the Achieving Reunification Center ("ARC") for assistance with his housing objective, but he never participated in those services.  *Id*. at 25.  Therefore, ARC discharged Father for non-compliance.  *Id*.

With respect to Father's FSP requirement that he participate in "caregiver sessions" at CCTC, Ms. Akines testified that Father last attended a session in March of 2017, at which time he did not successfully complete the program.  *Id*. at 28.  She explained that, without completing this FSP requirement, Father "does not understand the trauma that his daughter has suffered."  *Id*. at 29.  Therefore, she testified, Father cannot "move forward with reunification. . . ."  *Id*. at 29.

Moreover, although Father attended an orientation for sexual offender counseling, he has not participated in the counseling because he denied being a perpetrator.  *Id*. at 26.  Furthermore, Father has never provided verification of suitable employment.  *Id*. at 25.

With respect to visitation, Ms. Akines testified that Father started visiting L.S.M. in 2016. *Id*. at 23. In January of 2017, DHS granted him unsupervised overnight visits. *Id*. at 23, 37. Ms. Akines testified on direct examination as follows.

[Q]: And did the visits continue to be unsupervised at this point?

[A]: The visits were suspended at the last court date for him . . . due to him not taking advantage of the visitation that was afforded to him. There [were] also concerns regarding him taking [L.S.M.] to a person to babysit that wasn't approved. And the child felt uncomfortable with that caregiver. So, there were some judgment issues with regards to Father.

*Id*. at 23-24. On cross-examination by the GAL, Ms. Akines explained that Father was only 40% consistent with his overnight visits. *Id*. at 34. She continued:

[Q]: And that lack of consistency, led [L.S.M.] to struggle on a day to day basis with not knowing if she was going to have a visit or not?

[A]: Yes.

[Q]: And that was because she was nervous about having to leave the foster home?

[A]: That's correct.

*Id*. at 34.

Based on Ms. Akines' testimony, and the record of the dependency proceedings that was admitted as an exhibit during the termination hearing, we conclude that the trial court did not abuse its discretion in terminating Father's parental rights pursuant to § 2511(a)(2). The certified record clearly

reveals that Father did not make diligent efforts towards the reasonably prompt assumption of full parental responsibilities. *See In re A.L.D.*, *supra*. L.S.M. has been in placement since approximately January of 2013, at which time she was two years old. By the time of the termination hearing, L.S.M. had been in placement approximately fifty-four months, and she was six years old. Over the duration of that four-and-one-half-year period, Father failed to satisfy **any** of his FSP objectives.

As such, the certified record supports the trial court's conclusion that Father's repeated and continued incapacity, neglect, or refusal to satisfy his objectives has caused L.S.M. to be without essential parental care, control or subsistence necessary for her physical or mental well-being for four and one-half years. Likewise, the causes of Father's incapacity, neglect, or refusal cannot or will not be remedied.

With respect to § 2511(b), Father does not challenge the trial court's needs-and-welfare analysis. Instead, he baldly asserts that, based on the requisite bifurcated analysis in involuntary termination proceedings, "termination of his parental rights cannot be sustained independently under [§] 2511(b)," because DHS did not satisfy its burden of proof under § 2511(a)(2). Father's brief at 15. Since we determined that the trial court did not abuse its discretion in terminating Father's rights pursuant to § 2511(a)(2), Father's argument is misplaced. Furthermore, for the reasons

that follow, we conclude that the certified record supports the trial court's decision to terminate Father's parental rights pursuant to § 2511(b).

We are mindful of the following settled case law.

While a parent's emotional bond with his or her child is a major aspect of the subsection 2511(b) best-interest analysis, it is nonetheless only one of many factors to be considered by the court when determining what is in the best interest of the child. *In re K.K.R.S.*, 958 A.2d 529, 533-536 (Pa.Super. 2008). The mere existence of an emotional bond does not preclude the termination of parental rights. *See In re T.D.*, 949 A.2d 910 (Pa.Super. 2008) (trial court's decision to terminate parents' parental rights was affirmed where court balanced strong emotional bond against parents' inability to serve needs of child). Rather, the orphans' court must examine the status of the bond to determine whether its termination "would destroy an existing, necessary and beneficial relationship." *In re Adoption of T.B.B.*, 835 A.2d 387, 397 (Pa.Super. 2003). As we explained in *In re A.S.*, 11 A.3d 473, 483 (Pa.Super. 2010),

[I]n addition to a bond examination, the trial court can equally emphasize the safety needs of the child, and should also consider the intangibles, such as the love, comfort, security, and stability the child might have with the foster parent. Additionally, this Court stated that the trial court should consider the importance of continuity of relationships and whether any existing parent-child bond can be severed without detrimental effects on the child.

*In re N.A.M.*, 33 A.3d 95, 103 (Pa.Super. 2011).

Additionally, our Supreme Court has stated that, "[c]ommon sense dictates that courts considering termination must also consider whether the children are in a pre-adoptive home and whether they have a bond with their foster parents." *In re T.S.M.*, *supra* at 268. The Court directed that, in weighing the bond considerations pursuant to § 2511(b), "courts must keep the ticking clock of childhood ever in mind." *Id*. at 269. The *T.S.M.* Court

- 11 -

observed that, "[c]hildren are young for a scant number of years, and we have an obligation to see to their healthy development quickly. When courts fail . . . the result, all too often, is catastrophically maladjusted children." *Id*.

Instantly, the trial court concluded, "L.S.M. would not suffer any irreparable emotional harm if Father's parental rights were terminated." Trial Court Opinion, 11/16/17, at 6. It noted that L.S.M.'s primary bond was with her foster parent, whom she recognized as "Mom," and who satisfied the child's daily and therapeutic needs. *Id*. Additionally, the court observed that then-six-year-old L.S.M. preferred not to return to Father and, instead, desired to remain with her foster parent. *Id*. "Furthermore, the [c]ourt found L.S.M. was flourishing extremely well and acknowledged the foster parent as L.S.M.'s central caregiver." *Id*.

The certified record supports the trial court's determination. During the evidentiary hearing, Ms. Akines testified that no parent-child bond existed between Father and L.S.M. N.T., 7/13/17, at 30. Indeed, some of the child's interactions with Father were harmful. For example, Ms. Akines observed that L.S.M. "did decompensate once [Father] was granted unsupervised visits" during 2016. *Id*. at 30-31. That is, during the period that the court permitted unsupervised visitation, the child lost her ability to maintain normal and appropriate psychological defenses. *See* Stedman's Medical Dictionary, at 403 (25th Ed. 1990). Ms. Akines also testified that L.S.M. has a parent-child bond with her foster parent, who is willing to be a permanent placement

resource. N.T., 7/13/17, at 8, 21. Moreover, the record confirms the court's finding that L.S.M. informed Ms. Akines of her desire to remain with her foster mother rather than "return to . . . Father's home or resume visits." *Id*. Indeed, Ms. Akines testified that, if removed from the foster home, L.S.M. "would be traumatized because [the foster mother was] the person that she looks to for her daily care, and she has been there for half her life." *Id*. at 31.

Based on the foregoing, we conclude that the certified record supports the trial court's decision pursuant to § 2511(b) that terminating Father's parental rights will serve L.S.M.'s developmental, physical, and emotional needs and welfare. *See In re B.,N.M.*, 856 A.2d 847, 856 (Pa.Super. 2004) (stating, "a parent's basic constitutional right to the custody and rearing of his child is converted, upon the failure to fulfill his or her parental duties, to the child's right to have proper parenting and fulfillment of his or her potential in a permanent, healthy, safe environment"). Accordingly, we affirm the decree.

Decree affirmed.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary


Date: 3/27/18

- 13 -